Constructive discharge occurs when the employer deliberately makes working conditions so deleterious as to be intolerable and the only reasonable course for the employee is to resign. Only in these extreme circumstances can a quitting employee maintain a claim against her employer for any damages arising from the employment's cessation. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000); Brittell v. Department of Correction, 247 Conn. 148, 178 (1998); Wells v. Plainfield, 2003 WL 1787971, *2-3 (Conn. Super. 2003).

It is certainly not true here that Plaintiff was constructively discharged. A resignation tendered a month and a half in advance of its effective date is virtually de facto not due to intolerable conditions. Here Ms. Washington tendered her resignation February 16th to be effective on the last day of March, 2000. This places in question even whether her working conditions were subjectively intolerable to her. For all the reasons discussed infra, moreover, there is no evidence of objectively intolerable working conditions either.

Plaintiff's failure to take advantage of available procedures for internal rectification of the problems motivating the resignation also indicates that quitting was not the only reasonable course. CCCYMCA provided an internal grievance procedure for employees to reach the top management of the organization for review and resolution of workplace problems. Leson v. ARI of Connecticut, Inc., 51 F. Supp. 2d 135 (D. Conn. 1999) (Failure to explore nature of post-reorganization position defeated constructive discharge claim.)

In addition to the subjectively and objectively intolerable working conditions that are unprovable here, the element of deliberate Defendant action to make the conditions

-28-

intolerable is missing. This is a required element of a constructive discharge claim. Sims v. New London, 738 F. Supp. 638, 647 (D. Conn. 1990).

Some courts hold that the constructive discharge theory cannot apply unless the employer intended to drive the employee to quit. "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." Lombardo v. Oppenheimer, 701 F. Supp. 29, 30 (D. Conn. 1987) (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986)).  Thus, the courts have held that where the defendant employer has demonstrated an interest in retaining the plaintiff, as opposed to intending to force the plaintiff out, a claim of constructive discharge can not succeed.  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62 (2d Cir. 2000), 223 F.3d; see also Mesenbourg v. Dun & Bradstreet Software Services., Inc., 2001 WL 256153 (D. Conn. 2001) (finding no constructive discharge where employer told employee that he was a valued employee and encouraged him to stay).  In the instant case, before Ms. Washington resigned, Defendant promoted her, gave her enormous salary increases, including a 6% merit raise just weeks prior to her dismissal, paid for her training in Human Resources, and reviewed her performance favorably.  These actions certainly contradict the idea that Defendant was deliberately trying to get rid of Ms. Washington.

Even Courts that do not hold that an intent for the employee to depart is part of the plaintiff's burden to establish the constructive discharge claim, the need for proof of the employer's intent to make the working conditions intolerable is recognized. There is also no

-29-

evidence here that Defendant acted deliberately in creating the intolerable atmosphere. Whidbee; supra, 223 F3d at 72; Wright v. Milton Paper Co., 2002 WL 482536 (E.D.N.Y. 2002). "A plaintiff's 'overreaction to a reasonable business decision of his employer' is insufficient to establish that the plaintiff was constructively discharged." Pena v. Brattleboro Retreat, 702 F.2d 322, 326 (2d Cir. 1983); Mesenbourg v. Dun & Bradstreet Software Services, Inc., 2001 WL 256153, *5 (D. Conn. 2001).

V.    Plaintiff's State Law Claims Should Be Dismissed

In Count Three of the Complaint, Plaintiff asserts claims for "Emotional Distress" under Connecticut tort law. The dismissal of Plaintiff's federal claims would justify dismissal of the claims asserted in Count Three for jurisdictional reasons. Cioffi v. Allen Products Co., 2000 WL 33180448 (D. Conn. 2000). Nevertheless, Defendant asks this Court to exercise its discretion to rule on this motion substantively as to the State law claims, in light of the time and other resources the parties have already expended on this case and the clarity of the Connecticut law on the issue.

A.    Plaintiff Cannot Support A Claim for Intentional or Negligent Infliction Of Emotional Distress Because no Distress was Inflicted in the Course of her employment Termination Process

Discharge in and of itself cannot be the basis of infliction of emotional distress tort liability in an employment setting; nor can the ins and outs of the course of employment. Only the employer's actions in the termination process itself can give rise to this tort recovery. Parsons v. United Technologies Corp., Sikorsky Aircraft Division, 243 Conn. 66, 88-89 (1997).

-30-

B.  <u>Plaintiff Cannot Prevail On A Claim Of Intentional Infliction Of Emotional Distress Because Defendant's Conduct Was Not Outrageous</u>

Intentional infliction of emotional distress permits recovery for outrageous behavior beyond the bounds of decent society, shocking to the conscience and causing the observer to cry "Outrageous!" <u>Appleton v. Board of Educ.</u>, 254 Conn. 205, 210 (2000). This is not such a case.

Precious few terminations meet this high standard. Surely paying Plaintiff while she worked out her own declared lengthy notice period and allowing her to complete the course she had commenced at the CCCYMCA's expense does not constitute intentional infliction of emotional distress.

In the employment context, negligent (like intentional) infliction of emotional distress is applicable only to conduct undertaken in the course of the termination process. <u>Evans v. Marks,</u> 2003 WL 22790803 (Conn. Super. 2003). Here, the only conduct Defendant engaged in in the termination process was to accept Plaintiff's resignation, pay her to work as long as she wanted and permit her to complete the Fairfield University Certification course at Defendant's expense! Surely it would not be anticipated that such behavior would carry an unreasonable risk of inflicting emotional distress on Plaintiff to the point of causing illness or bodily harm. <u>Chieffalo v. Norden Systems, Inc.</u>, 49 Conn. App. 474 (1998).

-31-

## **CONCLUSION**

The facts of this case tell the story of an organization that gave a good employee a chance to capitalize on her intelligence and hard work to take on the challenge of establishing a new dedicated staff function of human resources management through the creation of a position, placement of the employee in the position, the assignment of a demanding executive to the employee's supervision and development and payment for intensive training in a full academic year certification course. The facts tell of the failure of the experiment through the employee's losing heart, experiencing feelings of being overwhelmed and undervalued. The supervisor's support was seen by the employee as oppression; the development demands, as punishment; the hoped-for future achievement, as an already accomplished goal deserving of immediate reward.

A failed experiment perhaps, but surely not a case of intentional age and race discrimination and deliberate, reckless or negligent infliction of emotional distress—not by any stretch of the imagination, let alone by any fair inference from the evidence.

Plaintiff was unhappy with the way the new position was going and decided not to pursue the opportunity further. This does not entitle her to recovery from her former employer nor to a determination that her employer wronged her through age or race discrimination or tortious conduct.

This matter should be dismissed in its entirety.

-32-

Done at Bridgeport, Connecticut, this 5th day of December, 2003.

<div style="margin-left: 40%;">

THE DEFENDANT
Central Connecticut Coast YMCA


By: _____
    Margaret M. Sheahan
    Federal Bar No. ct05862
For: Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT  06601-7006
    (203) 330-2000
    Facsimile (203) 576-8888
Its Attorneys

</div>

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on December 5, 2003 to all counsel and pro se parties of record.

For the plaintiff LILLIE WASHINGTON:

    Caleb M. Pilgrim
    1404 Whalley Avenue
    Second Floor
    New Haven, CT 06515
    (203)387-2524

Margaret M. Sheahan
Commissioner of the Superior Court

BPRT/67.123.2/EMP/499063v1

-34-