UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 JAN -8  P 5: 04

LILLIE WASHINGTON,
    Plaintiff,

v.

CENTRAL CONNECTICUT COAST
    YMCA.
        Defendant

CIVIL ACTION
NO. 3:01cv-1838 (MRK)

JANUARY 8, 2004

### PLAINTIFF'S LOCAL RULE 9©2 STATEMENT

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Denied to the extent that, whereas other similarly situated employees routinely received equity increases, Plaintiff never received equity increases such as would have brought her salary into line with comparable Bridgeport-originating positions with similar responsibilities.

1

12. Admitted.

13. Admitted. (See Exhibits A,B,C, D attached). The fact that the Plaintiff was not paid the same salary as other similarly situated directors, and her successor in the position of the Director of Human Resources constitutes objective evidence of discrimination.

14. Admitted. However, Plaintiff's salary remained lower than the salaries of other similarly situated directors.

15. Denied to extent that the sections of the Plaintiff's deposition cited by the defendant do not say what the defendant alleges here.

16. Admitted.

17. Denied. The EEOC Job Selection Guidelines establish that qualifications stated by an employer must be necessary to the particular job, and directly relevant to the employee's functional responsibilities. Ms. Washington, Director of Human Resources, Ms. Krause, Director of Finance, and Ms. Friedbacher, Ms. Washington's successor as Director of Finance all reported to Ms. Brena, the Executive Director. Ms. Washington, Director of Human Resources, Ms. Krause, Director of Finance, were similarly situated on the defendant's organizational chart and both operated at the same level. Plaintiff Washington was responsible for the defendant's entire Human Resources Department and its successful functioning and operation. (Washington Deposition, p. 217 l.9 - p.218, l.20).

2

18. Denied.

19. Admitted.

20. Denied to the extent that the defendant failed or refused to make this opportunity available to the plaintiff, just as the defendant had denied plaintiff training in certain of her job responsibilities, while upon information and belief, providing such opportunities to other similarly situated white employees. Ms. Brena or anyone acting in her position with respect to the refusal to invite the Plaintiff to the conference merely acted as an agent for the defendant.

21. Admitted to the extent that Ms. Brena supervised Ms. Washington, Director of Human Resources, Ms. Krause, Director of Finance, and Ms. Friedbacher, Ms. Washington's successor, all direct reports to Ms. Brena, the Executive Director.

22. Plaintiff is without sufficient current information and leaves the defendant to its proof.

23. Admitted.

24. Plaintiff is without sufficient current information and leaves the defendant to its proof.

25. Denied to the extent that the Plaintiff was the only Director singled out by the defendant's Helen Brena, and required to provide a log of her daily activities. Defendant's Brena signed off on employees' PIFs, work which was clearly the Plaintiff's responsibility, and took other actions in a

3

systematic attempt to undermine the Plaintiff in the execution of her duties and responsibilities (Washington Deposition, p.207, ll.3-19, p.211, l.17 – p.218, l.18). Notwithstanding these actions, Plaintiff was always rated an excellent employee.

26. Denied to the extent that Plaintiff was the only Director singled out by the defendant's Helen Brena, in this respect and there was never any standard methodology which guided the defendant Brena's actions, and which might reasonably have been disclosed to the Plaintiff so that she could comply with the defendant's requirements. Notwithstanding these actions, Plaintiff was always rated an excellent employee.

27. Plaintiff is without information and leaves the defendant to its proof.

28. Plaintiff is without sufficient current information and leaves the defendant to its proof.

29. Plaintiff is without sufficient current information and leaves the defendant to its proof. However, the plaintiff is the only employee whom Ms. Brena called "stupid, so stupid". Plaintiff was consistently belittled and harassed by Ms. Brena, such that she stated that "every conversation I had with her was antagonistic or stressful". Washington Deposition, p.203, ll.3-24.

30. Denied. (Washington Deposition p.219, l.13-16)

31. Admitted.

4

32. Admitted that Ms. Brena ordered the plaintiff to account for her time on a daily basis. The proffered reasons are denied, as pretextual, since Ms. Brena's actions were retaliatory, and wrongfully intended to be disciplinary, and only arose after the Plaintiff had asked Ms. Brena for a salary increase in 1999. Ms. Brena never asked the Director of Finance, or any other similarly situated employee, to prepare such a daily log of their activities. (Washington Deposition, p.113, l. 3 – p.114, l.22).

33. Plaintiff is without any information as to complaints about Ms. Krause, and there is no independent written complaints as to Ms. Krause's writings. Plaintiff thus leaves the defendant to its proof.

34. Admitted.

35. Denied. Defendant's actions were pretextual an illegitimate. This procedure of consulting the YMCA's national job analysis model to verify the plaintiff's position within the salary range had never been used previously with respect to other similarly situated employees. Such employees were routinely granted increases without reference to any national survey. (Washington Deposition, p.208, l.18 – p.209, l.12).

36. Denied, to the extent that it is irrelevant, as it pertains to a dispute after the Plaintiff's termination. Also, Plaintiff is without sufficient current information and leaves the defendant to its proof.

37. Admitted.

38. Admitted to the extent that Plaintiff did not give a response to Ms. Brena. Denied as to defendant's references to "Ms. Brena's boss, or anyone at all".

39. Admitted.

40. Admitted.

41. Admitted to the extent that Ms. Brena wrote a memo to Ms. Washington. Based on her actions, and her comments to the Plaintiff, Plaintiff has no reason to believe that Ms. Brena was in any way disappointed as a result of Ms. Washington's actions.

42. Admitted.

43. Admitted.

44. Admitted.

45. Admitted.

46. Admitted.

47. Irrelevant.

48. Denied. Plaintiff advised Phil Dwyer, Ms. Brena's superior, that she believed that race was a factor in the adverse treatment that she received. (Washington's Deposition, p.203, ll.10 – 24.)

49. Admitted.

50. Admitted, but irrelevant and immaterial to the extent that proceedings before the district court in this case are de novo, as in most discrimination cases.

51. Admitted, but irrelevant and immaterial to the extent proceedings before the district court in this case are de novo, as in most discrimination cases.

52. Admitted.

53. Plaintiff is without sufficient current information and leaves the defendant to its proof.

54. Denied. The inherent, functional, core job responsibilities of the Human Resources Director, did not change. Plaintiff virtually set up and developed the defendant's Human Resources Department, and to a greater or lesser extent executed many, if not all of the functions listed, in the HR Director's position.

55. Plaintiff is without sufficient current information and leaves the defendant to its proof.

56. Plaintiff is without sufficient current information and leaves the defendant to its proof. Denied, however, to the extent that Ms. Friedbacher's formal education was in Physical Education and Sports Specialization, rather than Human Resources. In this respect, her training and qualifications were no more relevant to the job of Human Resources Director, than Ms. Washington, who had been in Human Resources, with the Defendant, and virtually created the defendant's HR Department. There was no reasonable justification for the decision to pay Ms. Washington, a salary far below Ms. Friedbacher's salary of $63,690.00 per year.

57. Admitted.

**Issues of Material Fact:**

Issues of material fact in this case, include, but are not limited to the following:

1. Whether defendant's failure to pay the Plaintiff commensurately with other similarly situated employees constituted racial discrimination under 42 U.S.C. § 1981 and Title VII?

2. Whether defendant's adverse employment actions against the Plaintiff, including the requirement that the plaintiff submit daily logs, constituted discrimination under 42 U.S.C. § 1981 and Title VII?

3. Whether defendant's references to the plaintiff as "stupid, so stupid", and other degrading and derogatory treatment of the plaintiff, were mere "stray remarks" or constituted unlawful discrimination, and a hostile work environment under Title VII?

4. Whether the defendant's actions against Plaintiff, and the different payment made to younger employees, on their face, violated the ADEA?

5. Whether the defendant's actions were so severe that they compelled the Plaintiff to resign, giving rise to a claim of constructive discharge, notwithstanding the plaintiff's "resignation"?

>Respectfully Submitted,
>THE PLAINTIFF
>LILLIE WASHINGTON

By:  _____
Caleb M. Pilgrim
**Law Offices of Caleb M. Pilgrim, LLC**
1404 Whalley Avenue - 2nd Floor
New Haven, CT 06510
Tel: 203-387-2524
Federal Bar No. ct 14857

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, this 8th. day of January, 2004 to:

Lillie Washington
1264 Capitol Avenue
Bridgeport, CT 06606

Attorney Margaret M. Sheahan
Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06601-7006

_____
Caleb M. Pilgrim

9