# EXHIBIT H

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
BROWN, Plaintiff,
v.
PRUDENTIAL BACHE SECURITIES, Defendant.
No. 91 Civ. 3649 (LJF).
Nov. 13, 1992.
Order and Opinion

FREEH, District Judge.
*1 Errol Brown ("Brown"), proceeding pro se, filed this action against Prudential Bache Securities ("Prudential"), claiming that Prudential discriminated against him based on race during his term of employment with the firm. Brown alleges that (1) Prudential wrongfully administered a psychological stress evaluator test to him, in violation of New York Labor Law Article 20-B (SS 733-39) (Count I); (2) he was subject to discrimination in the terms and conditions of employment and terminated on the basis of race and national origin, in violation of Title VII of the Civil Rights Act of 1964,
as amended, > 42 U.S.C. S 2000e et seq., and > 42 U.S.C. SS 1981 and > 1983 (Count II); and (3) Prudential intentionally inflicted emotional distress upon him by, among other things, engaging in post-discharge surveillance, harassment, and defamation (Counts III and IV).

Prudential denies all of these allegations and moves for summary judgment pursuant to > Fed.R.Civ.P. 56. Brown opposes the motion and cross-moves for summary judgment. For the reasons stated below, Prudential's motion for summary judgment is granted in part and denied in part. Brown's motion for summary judgment is denied.

BACKGROUND

Brown, a black male, was employed by Prudential as a computer operator from November 1984 to July 1986. Brown was originally hired as a temporary employee; in February 1985, his position became permanent. In April 1986, Kenneth Schreiber ("Schreiber"), a white male, was hired for the position of "lead print pool operator" in Brown's department, a position which Brown claims he had previously held de facto, although this fact was not documented in Prudential's records.

Prudential denies Brown's claims and asserts that Schreiber was hired in April 1986 to fill the newly created position of lead print pool operator. However, the documentary evidence fails to support Prudential's claim that Schreiber's position was new. In fact, although Prudential's employment policies required that no outside candidates be considered for openings until a job had been posted internally and no qualified employee had applied, Prudential did not provide notice to its employees that a "new" position had become available.

1

In June 1986, Brown, who was responsible for printing out employees' paychecks, complained to his supervisor, Mike Brongo ("Brongo"), that other employees were receiving higher salaries than he. The evidence in the record indicates that employees who were performing approximately the same job duties were each receiving a different salary; while Brown's salary was $313 per week, other department employees, Charlie Cole and Teddy Colon, earned $265 per week and $285 per week, respectively. The two employees most recently hired earned significantly more than Brown. Michael Tantillo ("Tantillo"), who had come to Prudential with one and a half years of experience as lead computer operator at another brokerage house, was earning $390 per week. Schreiber's starting salary was $350 per week.

*2 When Brown questioned Brongo about the salary disparity, Brongo stated that Prudential had to pay its newest employees more than older employees. Nevertheless, Brongo claims that, in response to Brown's complaint, he processed a salary increase for Brown, which increase was to take effect on July 7, 1986.> [FN1]

The events immediately prior to Brown's discharge are unclear, since the parties have presented differing versions of the facts. Prudential maintains that Brown, in reaction to the alleged salary inequity, abused his lunch privileges, reported to work late, consistently refused to follow orders, and declined to accommodate computer users. Brown denies these allegations, and Prudential's employee evaluations during the relevant time period indicate that Brown was an ambitious and cooperative worker.

In any event, it is undisputed that when Schreiber was hired Brown refused to follow orders from him. Apparently, the situation deteriorated to the point that a meeting between Brown and Cyndi Altomare ("Altomare"), Vice President of Employee Relations, was arranged. At that meeting, Brown voiced his objections to Schreiber's hiring, and Altomare assured Brown that she would investigate the matter. During the EEOC investigation, Altomare asserted that a complete investigation confirmed that Brown was uncooperative and an unlikely candidate for promotion to lead print pool operator.> [FN2] However, these alleged findings are not documented in Prudential's records.

Before the EEOC Altomare also maintained that she warned Brown that his insubordination might result in discharge; Brown denies that the exchange ever occurred. The following day, Brongo again requested that Brown follow orders from Schreiber, and Brown again refused, asserting that he would not take such orders until the personnel department completed its investigation. Brongo then terminated Brown.

On December 31, 1986, Brown filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race. The EEOC initially found probable cause to believe Brown's allegations. However, the EEOC reconsidered that finding and ultimately determined there was no

2

probable cause to find a Title VII violation. On May 30, 1991, Brown filed a complaint with this Court.

DISCUSSION

With respect to Counts I, III, and IV of Brown's complaint, Prudential's motion for summary judgment is granted. With respect to Count II, the motion is denied to the extent that it alleges a Title VII violation, and granted to the extent that it alleges violations of > 42 U.S.C. SS 1981 and > 1983.

As an initial matter, we must address Prudential's argument that Brown's state law claims should be dismissed because Brown failed to invoke pendent jurisdiction over these claims. (Defendant's Memo. at 1). This argument is without merit. It is clear that "the absence from the ... complaint of any allegation concerning pendent jurisdiction does not bar consideration of the issue by this court. Pendent jurisdiction is not a matter which must be pleaded since the court already has jurisdiction over the case." > Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 809 n. 10 (2d Cir.1971). See also 5 Wright and Miller, > Federal Practice and Procedure S 1207. However, since Brown's allegations in Count I (unlawful administration of a stress evaluator test) and Count III (intentional infliction of emotional distress)
are both untimely and fail to state a claim, those claims are dismissed.

1. Unlawful Administration of Stress Evaluator Test

*3 While Article 20-B of New York's Labor Law bars employers from using psychological stress evaluator examinations, it does not preclude polygraph examinations. > Northdurft v. Ross, 429 N.Y.S.2d 844, 846 (1980), aff'd, > 445 N.Y.S.2d 222 (1981). Brown concedes that the test which was administered to him by Prudential was, in fact, a polygraph examination. (Amended Complaint P 8). Therefore, Brown has no claim under New York Labor Law.

Count I is also time-barred. In New York, the statute of limitations for intentional torts is one year. > C.P.L.R. S 215. > See Rosado v. City of New York, 713 F.Supp. 124, 125 (S.D.N.Y.1989). That limitations period begins to run as of the date that the act causing injury occurred. > Shamley v. International Telephone and Telegraph Corp., 869 F.2d 167, 172 (2d Cir.1989). Since the polygraph examination was administered in 1985, when Brown began permanent employment at Prudential, over seven years have passed since the incident. Accordingly, even if Brown's allegations in Count I had any merit, those allegations are untimely.

2. Intentional Infliction of Emotional Distress

Because claims for intentional infliction of emotional distress are similarly governed by a one-year statute of limitations, Count III of the complaint is also time-barred. > C.P.L.R. S 215. > See Schonberger v. Serchuk, 742 F.Supp. 108, 113 (S.D.N.Y.1990) (under New York law, one-year statute of limitations applies to claims for intentional infliction of emotional and physical distress and for damage to reputation). In addition, Brown has failed to allege the "extreme and outrageous conduct" required to make out intentional infliction of emotional

distress. > Murphy v. American Home Products Corp., 461 N.Y.S.2d 232, 236 (1983) (> citing Fischer v. Maloney, 402 N.Y.S.2d 991 (1978) and > Restatement of Torts Second S 46, subd. 1). As a result, Brown's allegations in Count III are also without merit and must be dismissed.

3. Post-Employment Surveillance

Brown alleges that Prudential has engaged in "surveillance, harassment, defamation, humiliation and invasion of [his] privacy in violation of > 42 U.S.C. S 1985(3) and other state and federal statutes ..." by ridiculing him and by calling him derogatory names. (Amended Complaint PP 23, 38.) > Section 1985 prohibits a conspiracy by two or more persons to deprive an individual of his civil rights. > 42 U.S.C. S 1985(3). However, Brown has not proffered any evidence that Prudential engaged in any acts which could constitute such a conspiracy. Although Brown claims that he has been under unlawful surveillance and that he has been called a shoplifter and homosexual upon entering stores (Amended Complaint P 23), he has no legitimate basis for attributing those acts to Prudential. Furthermore, as suggested by the Court in a pretrial conference, these allegations pertain to events which occurred well after Brown was terminated and therefore are irrelevant to the issue of employment discrimination. Because no reasonable jury could find in Brown's favor on Count IV, Prudential is entitled to judgment as a matter of law on that claim.

4. Title VII

*4 Despite the inadequacies of his state law claims, issues of material fact exist as to Brown's Title VII claims, precluding summary judgment in either party's favor. Prudential argues that Brown's Title VII claim is untimely because it was filed over ninety days after receipt of the EEOC's February 14, 1991 "right to sue" letter. (Defendant's Memo. at 5-6). However, the EEOC letter erroneously stated that Brown had until May 31, 1991 to commence a federal lawsuit. (EEOC Determination dated February 14, 1991). Since Brown filed within the time limit prescribed by the EEOC, the Court finds that the statute of limitations was equitably tolled. > See Zipes v. Trans World Airlines, Inc., 102 S.Ct. 1127, 1135 (1982) (compliance with EEOC filing requirement not a jurisdictional prerequisite, but rather subject to waiver when equity requires).

Prudential further argues that even if Brown's Title VII claims are deemed timely, summary judgment should be granted because there is no evidence to support a claim of discrimination. (Defendant's Memo. at 6-8). Summary judgment is appropriate only where the facts alleged present "no genuine issue of material fact." > Fed.R.Civ.P. 56; > Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). In the present case, the facts pertaining to the crucial issue of whether Brown's discharge was a result of racial discrimination or insubordination are greatly disputed. Therefore, summary judgment is improper.

Brown presents three separate claims of discrimination: (1) that Prudential discriminated against him in failing to consider him for the position of lead print

4

pool operator (Plaintiff's 3(g) Statement PP 3-12); (2) that Prudential discriminated against him in terms of compensation because he received a lower salary than either Schreiber or Tantillo, who were hired more recently than he (Amended Complaint PP 11-12; Brown's Aff. P 10); and (3) that Prudential discharged him in retaliation for his complaint about the pay disparity (Amended Complaint PP 13-21).

a. Failure to Promote

Prudential correctly argues that Brown's first claim alleging discrimination in refusing to consider him for a higher position must be dismissed for lack of jurisdiction.> [FN3] (Defendant's Supplemental Memo. at 4-6). This Court has jurisdiction to hear only those claims which were initially raised before the EEOC. > Miller v. International Telephone and Telegraph Corp., 755 F.2d 20, 25 (2d Cir.1984), cert. denied, > 106 S.Ct. 148 (1985); > Ritzie v. City University of New York, 703 F.Supp. 271, 278 (S.D.N.Y.1989). Because Brown's complaint to the EEOC fails to claim that he was not considered for the position of lead print pool operator (Charge of Discrimination dated December 31, 1986), and because the EEOC's findings specifically address only the issues of pay disparity and Brown's discharge (EEOC Determinations dated June 5, 1990 and February 14, 1991), this Court may not consider Brown's claim that Prudential discriminated against him in failing to consider him for a promotion.

b. Pay Disparity

*5 However, Brown's second claim, that Prudential discriminated against him by paying him lower wages than Schreiber,> [FN4] does raise issues of material fact, making summary judgment inappropriate. In order to succeed on that claim Brown must first establish, by a preponderance of the evidence, a prima facie case of discrimination. The burden then shifts to Prudential to articulate a legitimate, nondiscriminatory reason for the employment decision. Finally, Brown must demonstrate that Prudential's asserted reason for making the employment decision was actually a pretext for unlawful discrimination. > Texas Dept. of Community Affairs v. Burdine, 101 S.Ct. 1089, 1093 (1981); > McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817, 1824-25 (1973).

The Court finds that Brown has met the "not onerous" burden of establishing a prima facie case of disparate treatment. > Burdine, 101 S.Ct. at 1094. Applying the Burdine analysis to a claim of pay disparity, a plaintiff alleging racial discrimination in wages need only show, by a preponderance of the evidence, that he received lower wages than employees performing comparable tasks under circumstances which give rise to an inference of discrimination. > Id. at 1094, 1094 n. 6. Here, Brown presents evidence that a white man who was hired after him and who performed essentially the same tasks received $350 per week, while Brown received only $313 per week. (Plaintiff's Ex. J, K, M). Brown also presents evidence that (1) during the period immediately prior to his discharge, his work at Prudential was consistently good (Plaintiff's Ex. J); and (2) that

5

Prudential failed to follow its own employment policies when hiring Schreiber (Plaintiff's Ex. H).> [FN5] These circumstances, in addition to the pay disparity itself, are sufficient to give rise to an inference of discrimination.

Prudential has also satisfied its burden of articulating a legitimate, nondiscriminatory reason for the pay disparity between Brown and Schreiber. Prudential asserts that Schreiber's position was that of lead print pool operator, a higher position than print pool operator. (Defendant's Memo. at 2-3). Prudential further claims that at the time he was discharged Brown was due to receive a pay increase to $350 per week, the salary Schreiber was receiving. (First Brongo Aff. P 7).

However, Brown submits evidence suggesting that Prudential's asserted reasons for the pay disparity may in fact be a pretext for discrimination. A plaintiff may succeed in demonstrating that an employer's proffered reason for an employment decision was not its true reason "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." > Burdine, 101 S.Ct. at 1095.

Brown has presented sufficient evidence to call into question Prudential's explanation for the pay disparity. The affidavit of Charlie Cole, a co-worker of Brown's, shows that Brown had, de facto, been performing the duties of lead print pool operator. (Plaintiff's Ex. M). Prudential disputes this allegation and claims that only Schreiber, not Brown, had ever held the position. (Defendant's Memo. at 2). However, as noted previously, it is undisputed that Schreiber was hired in contravention of Prudential's hiring procedures, which would have afforded Brown an opportunity to apply for the position himself. (Plaintiff's Ex. H; see also Second Brongo Aff. P 4). Therefore, Prudential's claim that, as lead print pool operator, Schreiber should have been paid more than Brown, itself suggests discrimination because Prudential refused to consider Brown for the higher paying position.

*6 Moreover, the fact that Prudential began processing a pay increase immediately after Brown's complaint about the pay disparity (Plaintiff's Ex. J) suggests that the increase may have been prompted by Brown's complaint, raising the possibility that the complaint may have been legitimate. Because Brown raises a genuine issue of material fact as to whether Prudential's reasons for paying him a lower salary than Schreiber were merely a pretext for discrimination, the issue should properly be tried to a jury.

c. Retaliatory Discharge

Brown's claim that he was discharged in retaliation for complaining about the pay disparity also presents issues of fact that preclude summary judgment. Section 704(a) of Title VII prohibits an employer from discriminating "against any of his employees ... because [the employee] has opposed any practice made unlawful by this subchapter." > 42 U.S.C. 2000e-3(a). Retaliatory discharge claims are subject to the same shifting burden analysis as disparate treatment

6

claims. Hence, Brown must first establish a prima facie case of retaliation. The burden then shifts to Prudential to articulate a legitimate, nondiscriminatory reason for its action. If Prudential meets this burden, Brown must then show that the reasons advanced by Prudential are pretextual. > Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59, 64-65 (2d Cir.1992).

The standards for a prima facie case of retaliation are well established: "a plaintiff must show participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." Id.; > Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991). The requisite causal connection may be established "either 'indirectly by showing that the protected activity was followed closely by discriminatory treatment ... or directly through evidence of retaliatory animus directly against a plaintiff by the defendant.' " > Johnson, 931 F.2d at 207 (> citing DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir.1987), cert. denied, > 108 S.Ct. 455 (1987)) (emphasis in original).

Brown has met all of these requirements. It is undisputed that Brown complained to Prudential about what he believed to be a discriminatory practice and that he was discharged after making the complaint. (Amended Complaint PP 12-21; Defendant's Memo. at 3-4). Brown has also demonstrated that his discharge was a result of his refusal to follow Schreiber's orders until Brown's complaint had been processed by the Employee Relations Board. (Amended Complaint P 21; Defendant's Memo. at 4).

Prudential does not dispute the events that led up to Brown's discharge. However, Prudential offers as its legitimate, nondiscriminatory reason for discharging Brown the claim that Brown was terminated in response to his insubordination, not directly as a result of his complaint. (Defendant's Memo. at 11-12). As evidence of this insubordination, Prudential submits the affidavit of Brown's superior, Brongo, who states that Brown had been a disciplinary problem prior to his complaining about Schreiber's higher pay and that Brown's refusal to follow Schreiber's orders was another in a long list of problems that justified his discharge. (First Brongo Aff. P 6).

*7 However, Brown has produced evidence that Prudential had a policy of documenting all employee disciplinary problems. (Plaintiff's Ex. H). Despite that policy, Prudential failed to produce any written documentation supporting Brongo's allegations of prior insubordination, suggesting that Prudential's proffered reason for discharging Brown was in fact pretextual.

Brown has also (1) provided documentation that he received one pay increase for "merit" and was under consideration for a second "merit" increase when he was terminated (Plaintiff's Ex. J); and (2) raised an issue as to whether Prudential failed to follow written personnel procedures requiring consultation with the Employee Relations Board before taking any disciplinary action. (See Plaintiff's Ex. H). Although neither party disputes that they did in fact meet with Altomare

7

to discuss the matter, Brown was terminated the next day without any suggestion that Altomare had issued her promised recommendation. These circumstances, as well as those discussed above, certainly raise substantial issues of fact regarding Prudential's motivation in discharging Brown, also precluding summary judgment on Brown's retaliatory discharge claim.

Because issues critical to the disposition of Brown's pay disparity and retaliatory discharge claims are in dispute, the motion for summary judgment is denied as to those claims.

5. SS> 1981 and > 1983

As part of his second cause of action, Brown also alleges that Prudential "discriminated against [him] on the basis of race and national origin by its demotion and termination of [him], thereby preventing [Brown] from enforcing contracts," in violation of > 42 U.S.C. SS 1981 and > 1983. (Amended Complaint P 33).

a. S> 1981

> Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws ... as is enjoyed by white citizens...." A > section 1981 claim may relate only to the making of an employment contract, not to the subsequent conduct of the employer. > Patterson v. McClean Credit Union, 109 S.Ct. 2363, 2372 (1989).> [FN6]

Prudential argues that Brown's claim under this provision is barred by a six-year statute of limitations. (Defendant's Memo. at 16). Under New York law, an action for contractual obligation, including the obligations of an employment contract, are subject to a six-year statute of limitations. > C.P.L.R. 213(2); > see Jones v. Trans World Airlines, Inc. 495 F.2d 790, 799 (2d Cir.1974) (action seeking to restore employees to seniority positions
enjoyed under collective bargaining agreement deemed contract obligation for the purposes of S> 213(2)). The employment contract here was "executed" when Brown became a permanent employee of Prudential in 1985. Because this action was not filed within six years of that date, to the extent that Brown's > section 1981 claim relates to the "making" of his employment contract with Prudential, it is barred by the six-year statute of limitations.

*8 Brown has also failed to present evidence which would support a > section 1981 claim for Prudential's failure to promote him. The only post- formation contractual right protected under > section 1981 is the right to legal enforcement of the contract. > Patterson, 109 S.Ct. at 2373. Although a failure to promote has in some cases been deemed a violation of > section 1981, the Supreme Court has held that such cases are actionable "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and employer." > Id. at 2377. Because the promotion at issue in this case would not involve a new and independent employment contract, Prudential's failure to promote Brown is not compensable under > section 1981. > See, e.g., Harrison v.

8

Associates Corp. of North America, 917 F.2d 195, 178 (5th Cir.1990) ("[A] raise which is accompanied by no significant change in duties and responsibilities does not reach the level of a change in employment relations protected by S> 1981"); > Mozee v. American Commercial Marine Service Co., 940 F.2d 1036, 1054 (7th Cir.1991) (promotions of employees
to crane operator or leadman did not state a cause of action under > section 1981 because neither position represented a significant change in salary or duties).
  b. S> 1983
 > Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...."  Because Brown has failed to allege that Prudential acted under color of state law, section 1983 does not apply.  > See Studifin v. New York City Policy Department, License Division, Firearms Control Section, 728 F.Supp. 990, 993 (S.D.N.Y.1990) ("The color of state law requirement will not be met by claims against a private defendant ... absent allegations that it conspired with state officials.").
 For the foregoing reasons, Prudential's motion for summary judgment is granted as to the claims for wrongful administration of a psychological stress evaluator examination, intentional infliction of emotional distress, post- employment surveillance, and SS> 1981 and > 1983 violations.  The motion is denied, however, as to the Title VII claims of discrimination in pay and retaliatory discharge.  Brown's motion for summary judgment is denied.
 The parties are ordered, pursuant to > Fed.R.Civ.P. 16, to meet to attempt to resolve this matter.  In the event no agreement is reached, the parties shall file, no later than November 30, 1992, a consolidated pretrial order, in the form required by the Court.  A final pretrial conference shall be held on December 3, 1992.
  SO ORDERED.


> FN1. Although Prudential did not submit any evidence of the salary increase, Brown filed the information in support of his claim that he was performing his job satisfactorily and therefore was eligible for the position of lead print pool operator. (See Plaintiff's Ex. J.)


> FN2. This claim was made to the EEOC, but was not reasserted here. Accordingly, the Court is under no obligation to consider the claim in determining the motions for summary judgment.  However, even if Prudential's argument regarding its investigation of Brown's record were considered, it would not alter the Court's determination that material issues of disputed fact preclude summary judgment on Brown's Title VII claim.

> FN3. However, as discussed below, the issue is relevant to Brown's claim that Prudential discriminated against him in terms of compensation.

> FN4. Brown also relies on the pay disparity between him and Tantillo. (Amended Complaint PP 11-12; Brown's Aff. P 10). However, Brown has produced no evidence that Tantillo performed the same job or had the same qualifications as he did. Tantillo's official title was "Information Systems Operator." (Plaintiff's Ex. L). Before this Court, Brown fails to explain the duties of an Information Systems Operator or claim that they are substantially similar to his own. Absent such evidence, the Court has no basis for finding that Tantillo's higher salary resulted from discrimination.

> FN5. Prudential argues that its failure to post the job opening for lead print pool operator was not specifically raised in Brown's original complaint and thus that he should not be able to raise it now. (Defendant's Reply Memo. at 9). However, in evaluating a motion for summary judgment, the Court must view all the evidence in the light most favorable to the party opposing the motion-- here, Brown. > Sterling National Bank and Trust Co. of New York v. Fidelity Mortgage Investors, 510 F.2d 870, 875 (2d Cir.1975). In addition, the Court must construe the pleadings of pro se litigants liberally. Haines v. Kerner, 92 S.Ct. 584, 596 (1972); > Cunningham v. Ward, 546 F.2d 481, 482 (2d Cir.1976). Therefore, the Court does consider Brown's claim that Prudential bypassed its job posting procedure in evaluating defendant's motion for summary judgment, especially since Prudential's failure to allow Brown to apply for the position is evidence which supports Brown's claim of discrimination.

> FN6. The Civil Rights Act of 1991 ("CRA") extended the application of > section 1981. However, this Court has held that the CRA does not apply retroactively. > Kelber v. Forest Electric, 1992 WL 189247 (S.D.N.Y.1992). In the present case, the acts complained of occurred before the signing of the CRA on November 21, 1991. Accordingly, Brown cannot claim any additional rights under the Act.
S.D.N.Y.,1992.
Brown v. Prudential Bache Securities
1992 WL 350792 (S.D.N.Y.)
END OF DOCUMENT

10