UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LILLIE WASHINGTON,<br><br>                    PLAINTIFF<br><br>VS.<br><br>CENTRAL CONNECTICUT COAST YMCA,<br><br>                    DEFENDANT | CIVIL ACTION<br>NO. 3:01 CV-1838 (MRK)<br><br><br><br><br><br><br>January 23, 2004 |

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Defendant submits this reply to respond to the most significant misstatements and errors in and surrounding Plaintiff's Memorandum In Support of Plaintiff's Objection To Defendant's Motion For Summary Judgment ("Pl Mem").

I.   **This Court's Orders Have Not Been Carried Out**

Plaintiff's counsel timely paid defense counsel half of the fee award in this Court's November 13, 2003 order, fulfilling the obligation rendered his alone in this Court's December 4, 2003 order.  Plaintiff has made no payment to defense counsel, despite the clear obligation to do so imposed by those orders.  Nevertheless, despite this Court's admonition that fulfillment of the fee award obligation was a prerequisite to Plaintiff's being permitted to file with the Court, Plaintiff's papers in opposition to Defendant's summary judgment motion were filed and

served. Thus, Plaintiff has not obeyed the Court and has not suffered the announced consequences. Defendant has received only half the sanction it won and none of the alternative strategic advantage it expected.

II.   **Plaintiff's Opposition Papers Are Rife with Factual Misstatements And Bereft of Evidentiary Support.**

   A.   **The Major Falsehoods**

Eileen Krause, the White Finance Director, whose salary Plaintiff claims hers should have matched, did not come to the Defendant's employ with "little experience in a mom and pop store as a bookkeeper." (Pl Mem, p. 1) On the contrary, she came with 13 years experience in accounting positions of increasing responsibility, culminating as Controller, with a transportation company. (Krause Dep, p. 6, l. 12 - p.7, l. 12; p. 32, l. 11-15; Krause resume, Memorandum in Support of Motion for Summary Judgment ("Def Mem"), Ex. A-13)

It is also false that Plaintiff's supervisor "frequently disparaged her in the presence of other staff." (Pl Mem, p. 2, 3). Plaintiff's sworn testimony is "that happened just once." (Washington Dep, p. 127, l. 14-20) Nor did the supervisor "publicly refer to her as 'stupid, so stupid'." (Pl Mem, p. 3) Plaintiff's sworn version of the story (which Defendant denies occurred at all) is that her supervisor said this once, after Plaintiff left the supervisor's office where they had met alone, and <u>Plaintiff</u> immediately repeated it to another employee. (Washington Dep, p. 196, l. 9 – p. 197, l. 9)

Defendant's explanation of Plaintiff's salary level is not "little more than conflicting, contrived and cosmetic." (Pl Mem, p. 10) On the contrary, it is unified and consistent. Plaintiff

<u>pretends</u> that Defendant's explanations change and conflict. For example, perfectly consistent excerpts from Memorandum In Support of Defendant's Motion For Summary Judgment and Defendant's Rule 56 Statement are presented as if they were contradictory when their very language belies the implication. (Pl Mem, p. 8) Another example is Plaintiff's fantasy that there is a triable fact lurking somewhere in a "discrepancy" between how her salary was set and verified and the fact that in the years immediately following the 1984 merger between New Haven and Bridgeport entities that created the Defendant, equity increases equalized salaries for comparable positions that had previously existed in the pre-merged organizations. (Pl Mem, p. 10) Defendant explained this process to respond to Plaintiff's citation of same to support her argument that not giving her the raise she requested was unfairly different from other salary actions. It was not; her position did not have a counterpart in a predecessor or sibling organization.

  The distinction between the Plaintiff's salary and that of the person who became Defendant's Director of Human Resources in 2001, Suzanne Friedbacher, is not a distinction between salaries of persons holding the same job, despite Plaintiff's contrary allegation. (Pl Mem, p. 9-10, 11) Unlike the job Plaintiff quit, the new job manages two additional departments: Staff Development and Payroll. Payroll in and of itself is a huge responsibility in this multi-facility organization employing a large number of part-time employees with varying schedules. Other added aspects of the new job include responsibility for multiple Board functions, supervision of two full time staff members, budget planning and certification oversight. Also notably, the new job reports directly to the CEO rather than to a Vice President

3

as Plaintiff's did.  (Cf. Plaintiff's job description, Def Mem, Ex A-4, with Ms. Friedbacher's job description, Def Mem, Ex. A-9.)  It is fully consistent with Defendant's policy (Pl Mem, Ex. A) for the new job to have a higher salary than the old.[1]

### B.     Lack of Evidentiary Support

At Pl Mem, p. 4, Plaintiff correctly states that the non-moving party's obligation to defeat a motion for summary judgment is to "set forth specific facts showing there is no genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (emphasis supplied).  Plaintiff, however does not present facts or evidence to attack Defendant's Motion, but only assertions—and incorrect ones at that!  This does not meet the burden Plaintiff bears to avoid the just dismissal of this case at this stage.

### III.    Plaintiff Has Not Shown Inconsistencies In Defendant's Asserted Legitimate Reasons.

Conflicting and contradictory explanations by an employer for an adverse employment action can preclude summary judgment.  Here, however, unlike the defendant in EEOC v. Ethan Allen, Inc., 44 F.3d 116 (2d Cir. 1994), on which Plaintiff relies (Pl Mem, p. 5)[2], Defendant has not told different stories.  Ethan Allen first claimed that the contested discharge

---

[1] A comparison of Plaintiff's job description with that of the Finance Director, Ms. Krause (Ex. 1) is similarly illustrate of the difference between the positions that support the difference between their salaries.

[2] Plaintiff's reliance on Kim v. Dial Service Intern., Inc., 1997 WL 458783 (S.D.N.Y. 1997) is similarly misplaced.  That decision denying motion to set aside a jury verdict against a defendant involved direct evidence of discrimination in the form of ethnically derogatory statements in company communications and by its chief executive officer, factors totally missing from this case.

4

was caused by the work drying up, then that the work had only shrunk and that the plaintiff had indicated his disinclination to do what the remaining work required, and finally, that the plaintiff had been weighed in a neutral comparison with another employee and found less qualified for the remaining work.  Here, by contrast, Defendant's explanation of Plaintiff's salary is simple and unchanging.  See discussion supra at p. 2-3.

IV.   **Plaintiff Cannot Avoid Summary Judgment By Her Attempt To Support A Retaliation Claim.**

Plaintiff's opposition to Defendant's Motion for Summary Judgment includes an extensive argument that there is a triable issue of fact about whether she was harassed in retaliation for complaining about race discrimination. (Pl Mem, p. 12 – 14)  This argument cannot avail her for several important reasons.

   A.   **Plaintiff's Complaint does not allege retaliation.**

A careful review of the complaint in this action shows that the word retaliation is never used and that the concept of retaliation is never pled.  Plaintiff alleges race, color and age discrimination in violation of 42 U.S.C. § 1981 and Title VII and that the same actions underlying these statutory claims constitute actionable infliction of emotional distress.  Plaintiff does not anywhere allege that she made a complaint of unlawful discrimination nor that any action taken by Defendant of which she complains was a reaction to any such complaint.

   B.   **Plaintiff did not allege retaliation in her administrative claims and therefore cannot recover for it in a court action under Title VII.**

Plaintiff's administrative filing forms gave her the opportunity to allege retaliation specifically by checking off a retaliation box, which she did not do.  See Def Mem, Ex. A-10.

Plaintiff's counsel authored correspondence to correct what he termed the erroneous omission of an Equal Pay Act claim in the administrative filing but nowhere sought to add a claim for unlawful retaliation. See Ex. 2 attached hereto. Defendant cannot be made to try an unpled claim under Title VII at this late stage when it is not reasonably related to charged claims. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001)

    **C.**    **Evidence could not support a claim of retaliation because Plaintiff does not claim to have made any assertion of race discrimination until after all the harassment she now claims was retaliatory.**

Plaintiff's sworn testimony only includes one instance of her mentioning that she believed race was a factor in actions and decisions she opposed. This was her exit interview with Defendant's CEO, which occurred after she had tendered her resignation and well after everything that she says drove her to do so. (Washington Dep., p. 203) Her statements to Ms. Breña in their initial meeting about the 1999 review and (too low) 6% recommended raise included no allegation of race discrimination. Her "secret" reply to her 1999 review does not mention race and she testified that it reflected the content of her oral comments in their initial meeting on the subject. Washington Dep., p. 171, l. 6 - 177, l. 3. Ms. Breña's response to the "secret" reply and to Ms. Washington's initial inquiry about the propriety of her salary being lower than the Finance Director's did not mention race. Ms. Washington confirmed under oath that the memo reflecting the meeting in which she received that response accurately reflected the content of the meeting. The memo is devoid of any mention of race or discrimination. In every case that Plaintiff cites to support the idea that there is a triable retaliation claim here, there was a very palpable, undeniable, in fact, a formal complaint of discrimination that

6

preceded and therefore arguably motivated adverse action the Plaintiff attacked as retaliatory. (Pl Mem, p. 12-14) The glaring absence of any such facts in this case would damn any retaliation claim Plaintiff had not waived through her failure to assert it.

**D.      Plaintiff's Constructive Discharge Case Is Fatally Flawed.**

Plaintiff's uses many cases to support her constructive discharge case's viability that actually support Defendant's position. For example, in Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61 (5th Cir. 1980) (Pl Mem, p. 15), the plaintiff's allegations of pay discriminatorily lower than her coworkers, rejection of her request for an equalizing raise and a requirement that she, but not they, punch a time clock did not amount to intolerable circumstances converting her resignation to a constructive discharge. This is strikingly resonant of Plaintiff's claim that her requirement to report how she spent her time coupled with her boss's refusal to give her an additional raise. Plaintiff's description of the Satterwhite case, (Pl Mem, p. 16) describes a series of experiences unlike any Plaintiff ever endured. On the contrary, she was not denied but ensured training opportunities, she never had anyone promoted over her at all, let alone anyone she had to train and she certainly did not have dull work relegated to her disproportionately because her work did not change while she held the position she quit. Unlike the unfortunate Clark v. Marsh, plaintiff described (id.), Plaintiff here was never denied a promotion, let alone repeatedly, nor did she file a single administrative complaint with or without result. Also, Plaintiff here was never demoted, subjected to duties changes, assigned manual labor or otherwise treated like the Plaintiffs in Williams and Buckley (id.).

There are simply no factual issues here that would permit a fact finder to determine that Plaintiff had no choice but to quit and because of conduct by Defendant deliberately designed to make her conditions unbearable.

**CONCLUSION**

For all the foregoing reasons and all those stated in Memorandum In Support of Defendant's Motion For Summary Judgment, Defendant submits that summary judgment dismissing the Complaint in its entirety with prejudice is fully warranted.

Done at Bridgeport, Connecticut, this 23rd day of January, 2004.

                THE DEFENDANT
                Central Connecticut Coast YMCA

                By:  /s/ Margaret M. Sheahan
                      Margaret M. Sheahan
                      Federal Bar No. ct05862
                For:  Pullman & Comley, LLC
                      850 Main Street, P.O. Box 7006
                      Bridgeport, CT  06601-7006
                      (203) 330-2000
                      Facsimile (203) 576-8888
                Its Attorneys

## **CERTIFICATION**

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on January 23, 2004 to all counsel and pro se parties of record.

For the plaintiff LILLIE WASHINGTON:

    Caleb M. Pilgrim
    1404 Whalley Avenue
    Second Floor
    New Haven, CT 06515
    (203)387-2524

                                       /s/ Margaret M. Sheahan
                                       Margaret M. Sheahan
                                       Commissioner of the Superior Court

BPRT/67123.2/MMS/504943v1